Sheehan & Associates, P.C.
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Telephone: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*

Reese LLP
Michael R. Reese
100 W 93rd St Fl 16
New York NY 10025-7524
Telephone: (212) 643-0500
Fax: (212) 253-4272
*mreese@reesellp.com*

United States District Court
Southern District of New York                                          1:20-cv-03588

| | |
|---|---|
| Katherine Shimanovsky, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| - against - | Class Action Complaint |
| S. C. Johnson & Son, Inc., | |
| Defendant | |

Plaintiff by attorneys allege upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.     S. C. Johnson & Son, Inc. ("defendant") manufactures, distributes, markets, labels and sells window cleaning solution described as a "Non-Toxic Formula", under the Windex brand ("Product").

2.     The Product are available to consumers from retail and online stores of third-parties and are sold in containers of 23 OZ.

3.      The relevant representations include "Windex," "Streak Free Shine," "Bottle Made Of 100% Ocean Plastic," "Non-Toxic Formula" and a picture of an ocean wave.




4.      In recent years, consumers have become significantly more aware and sensitive of their impact on the environment through the products they choose to purchase and use in their daily lives.

5.      Many consumers desire to purchase and use natural, environmentally sound and safer alternatives to traditional glass and window cleaners.

6.      As a result, a market has developed for consumer products that contain natural ingredients, do not cause physical harm and are environmentally sound, *i.e.* that are made from recycled goods, that are biodegradable or other signifiers that the product itself is less harmful to the environment in its production, use or disposal.

7.      Defendant markets and sells the Product as an environmentally-friendly alternative to traditional window and glass cleaning products.

8.      To appeal to environmentally conscious consumers, the packaging represents that the bottle is made of "100% Ocean Plastic" and that the Product is "Non-Toxic."

9.      The Federal Trade Commission (FTC) has issued guidelines for products marketed with such environmental messages in the form of Green Guides ("Guides").

10.     The Guides apply to the marketing and sale of products purported to be environmentally-friendly, to "help marketers avoid making environmental marketing claims that are unfair or deceptive." 16 C.F.R. § 260.1.

11.     The Guides prohibit "deceptive acts" or representations which are "likely to mislead consumers acting reasonably under the circumstances and [are] material to consumers' decisions," including representations made through labeling, advertising or other promotional services. 16 C.F.R. § 260.1.

12.     Specifically, "it is deceptive to misrepresent, directly or by implication, that a product, package or service is non-toxic" and "a non-toxic claim likely conveys that a product, package, or service is non-toxic for humans and for the environment generally." 16 C.F.R. § 260.10(a).

13.   To accurately and non-deceptively claim that a product is "non-toxic," marketers must have reliable scientific evidence to substantiate such a claim or "should clearly and prominently qualify their claims to avoid deception." 16 C.F.R. § 260.10(b).

14.   The EPA has cautioned that non-toxic claims might prevent consumers from taking necessary precautions in handling a product and the FTC warned marketers to qualify non-toxic claims carefully unless the marketers can substantiate all express and implied messages inherent in an unqualified non-toxic claim.[1]

15.   The Product's "non-toxic" claim signifies to reasonable consumers that the Product will not be harmful to people (including small children), common pets or the environment.[2]

16.   A reasonable consumer's understanding of "will not harm" is not limited to toxins that cause death but "also various types of temporary physical illness, such as vomiting, rash and gastrointestinal upset."[3]

17.   Contrary to the Product's claims of being "non-toxic," the Product contains ingredients that may be harmful to humans, household pets or the environment generally.

18.   Several of the Product's ingredients are inconsistent with an unqualified non-toxic claim as that term is applied and understood by consumers.

---

[1] FTC, The Green Guides Statement of Basis and Purpose at 147.
[2] https://bbbprograms.org/media/details/nad-reccomends-s.c.-johnson-discontinue-non-toxic-claim-on-windex-vinegar-glass-cleaner-advertiser-to-appeal-to-narb
[3] *Id.*

19.    While defendant makes its prominent and unqualified non-toxic claim on the Product's packaging, the packaging fails to disclose the presence of the potentially harmful and toxic compounds, which are only available to consumers from defendant's website.

> **INGREDIENTS:**           WATER,           2-HEXOXYETHANOL, BUTOXYPROPANOL, PROPYLENE GLYCOL, SODIUM C14-17 SEC-ALKYL      SULTONATE,      ACETIC      ACID,      SODIUM DODECYLBENZENE SULFONATE, LACTIC ACID, FRAGRANCE

20.    Specifically, the Product's three cleaning agents would each, separately, disqualify the Product from making an unqualified non-toxic claim:  2-Hexoxyethanol, Butoxypropanol and acetic acid ("vinegar").

21.    The toxic active cleaning ingredients in the Product can cause the types of temporary physical illnesses identified above.

22.    Vinegar is a known irritant and its effect on humans, household pets and/or the environment marks it as a potentially toxic substance that belies the Product's "non-toxic" representation.

23.    The website for the National Capital Poison Center has a lengthy page listing the potential complications from contact or ingestion of vinegar and notes, "vinegar can cause injury if improperly used."[4]

24.    Further, when vinegar gets in the eyes, irritation and redness are common and more serious corneal injury can occur.[5]

25.    2-Hexoxyethanol is described by defendant as "a cleaning agent, or 'surfactant, that we use in our products to remove dirt and deposits."

26.    Defendant omits that 2-Hexoxyethanol is also a toxic chemical compound with

_____

[4] https://www.poison.org/articles/vinegar-164 (April 2, 2020).
[5] *Id*.

5

potentially profound negative effects on humans, household pets and the environment.

27.    A major solvent, 2-Hexoxyethanol may cause central nervous system depression and kidney failure and may be absorbed through the skin.[6]

28.    According to the Hazardous Substance Data Bank, 2-Hexoxyethanol is a severe eye and respiratory irritant.[7]

29.    Butoxypropanol is described by defendant as "a solvent cleaning agent commonly used in detergents."

30.    However, butoxypropanol is a highly hazardous, harsh chemical compound with potentially harmful effects on humans, household pets and the environment.

31.    Butoxypropanol causes skin irritation and serious eye damage and irritation.[8]

32.    Reasonable consumers will not have the time, ability or knowledge to visit defendant's website at the point-of-sale and/or in a store when deciding to purchase the Product based on defendant's deceptive and misleading non-toxic claims.

33.    Even if consumers did scrutinize defendant's website, they would need to research these components to figure out if they are harmful and apply this information to the meaning of "non-toxic."

34.    Defendant's branding and packaging of the Product is designed to – and does – deceive, mislead, and defraud consumers.

35.    Defendant has sold more of the Products and at higher prices per unit than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

36.    The marketing of the Product as "non-toxic" has a material bearing on price or

---

[6] https://haz-map.com/Agents/3112 (April 3, 2020).
[7] *Id.*
[8] https://pubchem.ncbi.nlm.nih.gov/compound/3032854#section=GHS-Classification

consumer acceptance of the Products because consumers are willing to pay more for such Products.

37.    Defendant's branding and packaging of the Product is designed to – and does – deceive, mislead, and defraud plaintiff and consumers.

38.    Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers like plaintiff.

39.    The value of the Product that plaintiff purchased and used was materially less than its value as represented by defendant.

40.    Had plaintiff and class members known the truth, they would not have bought the Product or would have paid less for them.

41.    As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less than $3.17 for containers of 23 OZ, excluding tax, compared to other similar products represented in a non-misleading way.

<u>Jurisdiction and Venue</u>

42.    Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

43.    Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

44.    Plaintiff Katherine Shimanovsky  is a citizen of New York.

45.    Defendant S. C. Johnson & Son, Inc. is a Wisconsin corporation with a principal place of business in Racine, Racine County, Wisconsin and is a citizen of Wisconsin.

46.    Venue is proper because plaintiff purchased the Product, became aware of the events

or omissions giving rise to the claims and resides in this district. *See* 28 U.S.C. § 1391(b)(2).

47.    Venue is supported because many class members reside in this District.

48.    This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

Parties

49.    Plaintiff Katherine Shimanovsky is a citizen of New York, New York County, New York.

50.    Defendant S. C. Johnson & Son, Inc. is a Wisconsin corporation with a principal place of business in Racine, Wisconsin, Racine County.

51.    During the relevant statutes of limitations, plaintiff purchased the Product within her district and/or State at store(s) including Home Depot, for personal and household use in reliance on the representations the Product was non-toxic.

52.    Plaintiff bought the Product because she wanted to avoid harm caused by harsh chemicals and understood non-toxic in the manner identified above.

53.    Plaintiff would buy the Product again if assured it did not contain components which were inconsistent with the use of an unqualified non-toxic claim.

Class Allegations

54.    The class will consist of all purchasers of the Product who reside in New York during the applicable statutes of limitations.

55.    Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

56.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

57.   Plaintiff is an adequate representatives because her interests do not conflict with other members.

58.   No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

59.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

60.   Plaintiff's counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

61.   Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>New York General Business Law ("GBL"), §§ 349 & 350</u>
<u>(Consumer Protection Statutes)</u>

62.   Plaintiff incorporates by reference all preceding paragraphs.

63.   Plaintiff and class members desired to purchase and use products which were as described and marketed by defendant and expected by reasonable consumers, given the product type.

64.   Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

65.   Defendant misrepresented the effects of the components of the Product.

66.   The absence of components which can be toxic, as this term is understood by consumers, has a material bearing on price and consumer acceptance of such products, as consumers will pay more for products which are non-toxic.

67.   Plaintiff relied on the statements, omissions and representations of defendant, and defendant knew or should have known the falsity of same.

68.   Plaintiff and class members would not have purchased the Product or paid as much

if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

69.    Plaintiff incorporates by reference all preceding paragraphs.

70.    Defendant misrepresented the substantive, sensory and compositional attributes of the Product.

71.    The absence of components which can be toxic, as this term is understood by consumers, has a material bearing on price and consumer acceptance of such products, as consumers will pay more for products which are non-toxic.

72.    Defendant had a duty to disclose and/or provide non-deceptive marketing of the Product and knew or should have known same were false or misleading.

73.    This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product type.

74.    The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

75.    Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

76.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty, Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*</u>

77.    Plaintiff incorporates by reference all preceding paragraphs.

78.    The Product was manufactured, labeled and sold by defendant and warranted to plaintiff and class members that they possessed substantive, functional, compositional, sensory,

physical and other attributes which they did not.

79.    The absence of components which can be toxic, as this term is understood by consumers, has a material bearing on price and consumer acceptance of such products, as consumers will pay more for products which are non-toxic.

80.    Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

81.    This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

82.    Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

83.    Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding the Product, of the type described here.

84.    The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable.

85.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Fraud

86.    Plaintiff incorporates by reference all preceding paragraphs.

87.    The absence of components which can be toxic, as this term is understood by consumers, has a material bearing on price and consumer acceptance of such products, as consumers will pay more for products which are non-toxic.

88.    Defendant's fraudulent intent is evinced by its failure to accurately identify the

Product on the front labels, when it knew its statements were neither true nor accurate and could and did mislead consumers.

89.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Unjust Enrichment</u>

90.    Plaintiff incorporates by reference all preceding paragraphs.

91.    Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1.    Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2.    Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3.    Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4.    Awarding monetary damages and interest pursuant to the common law and other statutory claims;

5.    Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6.  Other and further relief as the Court deems just and proper.

Dated:   May 7, 2020

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan

Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Tel: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

Reese LLP
Michael R. Reese
100 W 93rd St Fl 16
New York NY 10025-7524
Telephone: (212) 643-0500
Fax: (212) 253-4272
*mreese@reesellp.com*

1:20-cv-03588
United States District Court
Southern District of New York

Katherine Shimanovsky, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

S. C. Johnson & Son, Inc.,

Defendant

## Class Action Complaint

```
Sheehan & Associates, P.C.
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
    Tel: (516) 303-0552
    Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  May 7, 2020

/s/ Spencer Sheehan
Spencer Sheehan