**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan
*spencer@spencersheehan.com*
60 Cuttermill Road, Suite 409
Great Neck, New York 11021-5101
Telephone: (516) 303-0552
Fax: (516) 234-7800


**REESE LLP**
Michael R. Reese
*mreese@reesellp.com*
Sue J. Nam
*snam@reesellp.com*
100 W 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Fax: (212) 253-4272

*Counsel for Plaintiffs*
*and the Proposed Class*

United States District Court
Southern District of New York                    1:20-cv-03588-RA

| | |
|---|---|
| Carmen Rivera, Letisha Williams, Rosemary Vavitsas, Lisa Mack, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | First Amended Class Action Complaint |
| - against - | |
| S. C. Johnson & Son, Inc., | |
| Defendant | |

Plaintiffs Carmen Rivera, Letisha Williams, Rosemary Vavitsas and, Lisa Mack (collectively "Plaintiffs"), by their undersigned attorneys, allege upon information and belief, except for allegations pertaining to Plaintiffs, which are based on personal knowledge:

1.   S. C. Johnson & Son, Inc. ("Defendant") manufactures, distributes, markets, labels and sells cleaning solutions under its popular "Windex" brand.  Defendant prominently labels its line of Windex products as consisting of a "Non-Toxic Formula" ("Products").

2.   The Products include Original Non-Toxic Formula, Vinegar Non-Toxic Formula, Ammonia-Free Non-Toxic Formula and Multi-Surface Non-Toxic Formula, available to consumers from retail and online stores of third-parties. Below are examamples of the deceptively labeled Products:

1

### Windex Original Non-Toxic Formula



**Windex Vinegar Non-Toxic Formula**



### Windex Ammonia-Free Non-Toxic Formula



**Windex Multi-Surface Non-Toxic Formula**



3.     In recent years, consumers have become significantly more aware and sensitive of their impact on the environment through the products they choose to purchase and use in their daily lives.

4.     Many consumers desire to purchase and use natural, environmentally sound and safer alternatives to traditional glass and window cleaners.

5.     As a result, a market has developed for consumer products that contain natural ingredients, do not cause physical harm and are environmentally sound, *i.e.* that are made from recycled goods, that are biodegradable or other signifiers that the product itself is less harmful to the environment in its production, use or disposal.

6.     Defendant markets and sells the Products as environmentally-friendly alternatives to traditional window and glass cleaning products.

7.     To appeal to environmentally conscious consumers, the packaging represents that the bottle is made of "100% Ocean Plastic" or "100% Recycled Plastic" and that the Products are "Non-Toxic."

8.     The Federal Trade Commission (FTC) has issued guidelines for products marketed with such environmental messages in the form of Green Guides ("Guides").

9.     The Guides apply to the marketing and sale of products purported to be environmentally-friendly, to "help marketers avoid making environmental marketing claims that are unfair or deceptive." 16 C.F.R. § 260.1.

10.     The Guides prohibit "deceptive acts" or representations which are "likely to mislead consumers acting reasonably under the circumstances and [are] material to consumers' decisions," including representations made through labeling, advertising or other promotional services. 16 C.F.R. § 260.1.

11.    Specifically, "it is deceptive to misrepresent, directly or by implication, that a product, package or service is non-toxic" and "a non-toxic claim likely conveys that a product, package, or service is non-toxic for humans and for the environment generally." 16 C.F.R. § 260.10(a).

12.    To accurately and non-deceptively claim that a product is "non-toxic," marketers must have reliable scientific evidence to substantiate such a claim or "should clearly and prominently qualify their claims to avoid deception." 16 C.F.R. § 260.10(b).

13.    The EPA has cautioned that non-toxic claims might prevent consumers from taking necessary precautions in handling a product and the FTC warned marketers to qualify non-toxic claims carefully unless the marketers can substantiate all express and implied messages inherent in an unqualified non-toxic claim.[1]

14.    Indeed, in commenting on the Green Guides, the EPA "believes that marketers will 'rarely, if ever, be able to adequately qualify and substantiate such a claim of 'non-toxic' in a manner that will be clearly understood by consumers'"[2]

15.    The Products' "non-toxic" claims signify to reasonable consumers that the Products will not be harmful to people (including small children), common pets or the environment.[3]

16.    Defendant's advertising and marketing of the Product has been admonished by the National Advertising Division of the Council of Better Business Bureaus Inc. (NAD), which "monitors national advertising in all media, enforcing high standards of truth and accuracy" and

---

[1] FTC, The Green Guides Statement of Basis and Purpose at 147.
[2] EPA Comments on Proposed Revisions to Green Guides (2010) (available at https://www.ftc.gov/sites/default/files/documents/public_comments/guides-use-environmentalmarketing-claims-project-no.p954501-00288%C2%A0/00288-57070.pdf
[3] https://bbbprograms.org/media/details/nad-reccomends-s.c.-johnson-discontinue-non-toxic-claim-on-windex-vinegar-glass-cleaner-advertiser-to-appeal-to-narb

"examines advertising claims made for . . . 'green' or natural claims."[4]

17.    Around March 2020, the NAD launched an investigation into the Products' "non-toxic" claims and found, following FTC precedent, that the term "non-toxic" as used by the Products signifies to reasonable consumers that the Products will not be harmful to people (including small children), common pets or the environment.[5]

18.    The NAD concluded that a reasonable consumer's understanding of "will not harm" is not limited to toxins that cause death but "also various types of temporary physical illness, such as vomiting, rash and gastrointestinal upset."[6]

19.    Contrary to the Products' claims of being "non-toxic," the Products contain ingredients that may be harmful to humans, household pets or the environment generally.

20.    Several of the Products' ingredients are inconsistent with an unqualified non-toxic claim as that term is applied and understood by consumers.

21.    While Defendant makes its prominent and unqualified non-toxic claim on the Products' packaging, the packaging fails to disclose the presence of the potentially harmful and toxic compounds.

22.    In spite of the labeling, the Products contain, in varying combinations, ingredients that are harmful to humans, animals, and/or the environment, including, but not limited to, acetic acid, alkylbenzene sulfonate, ammonium hydroxide, benzyl benzoate, fragrance components, isopropanolamine, lactic acid, lauramine oxide, propylene glygol, sodium hydroxide, sodium petroleum sulfonate, sodium xylene sulfonate, 2-(hexyloxy)-ethanol.

---

[4] https://bbbprograms.org/programs/nad/nad-contact-us (April 2, 2020).
[5] https://bbbprograms.org/media/details/nad-reccomends-s.c.-johnson-discontinue-non-toxic-claim-on-windex-vinegar-glass-cleaner-advertiser-to-appeal-to-narb
[6] *Id*.

23.   The Products contain the following ingredients:

**Windex Original Glass Cleaner**
- 2-Hexoxyethanol
- Isopropanolamine
- Ammonium Hydroxide
- Sodium C10-16 Alkylbenzenesulfonate
- Sodium Xylene Sulfonate
- Methylpropional
- Citronellol
- Citrus Aurantium Dulcis Peel Oil
- Hexyl Cinnamal
- Linalool
- Terpineol
- 

**Windex Multi-Surface Cleaner**
- 2-Hexoxyethanol
- Propylene Glycol
- Sodium Hydroxide
- Sodium C10-16 Alkylbenzenesulfonate
- Sodium Xylene Sulfonate
- Sodium Petroleum Sulfonate
- Linalool
- Linalyl Acetate

**Windex Vinegar Cleaner**
- 2-Hexoxyethanol
- Propylene Glycol
- Acetic Acid
- Lactic Acid
- Linalool
- Linalyl Acetate

**Windex Crystal Rain (Ammonia-Free)**
- 2-Hexoxyethanol
- Isopropanolamine
- Sodium C10-16 Alkylbenzenesulfonate
- Sodium Xylene Sulfonate
- Benzyl Benzoate
- Lauramine Oxide
- Sodium Hydroxide
- 4-Tert-Butylcyclohexyl Acetate
- Butylphenyl Methylpropional
- C11-15 Sec-Pareth-12
- Hexamethylindanopyran
- Hexyl Cinnamal
- Tetramethyl Acetyloctahydronaphthalenes

24.     The toxic ingredients' effects are listed below.

25.     **Acetic Acid**.   Upon information and belief, acetic acid can cause severe ocular irritation at in-use concentrations.[7]

26.     **Alkylbenzene Sulfonate (Linear Alkylbenzene Sulfonate ("LAS")).** Upon information and belief, alkylbenzene sulfonate, including sodium C10-16 alkylbenzenesulfonate, can cause skin and eye irritation at in-use concentrations.  In addition, upon information and belief, alkylbenzene sulfonate can cause damage to certain plants and seedlings.

27.     **Ammonium Hydroxide.**  Upon information and belief, ammonium hydroxide can cause conjunctivitis and corneal damage at in-use concentrations.

28.     **Benzyl Benzoate.** Upon information and belief, benzyl benzoate is a skin sensitizer at in-use concentrations.

29.     **Fragrances.** Fragrance refers to the combination of chemicals (or "Fragrance Components") in a Product that gives the Product its distinct scent. The Fragrance Components in the Products include, in varying combinations, **Methylpropional; Citronellol; Citrus Aurantium Dulcis Peel Oil; Hexyl Cinnamal; Terpineol; Linalool; Linalyl Acetate; 4-Tert-Butylcyclohexyl Acetate; Butylphenyl Methylpropional; C11-15 Sec-Pareth-12; Hexamethylindanopyran; Hexyl Cinnamal; and Tetramethyl Acetyloctahydronaphthalenes**.

30.     Fragrances have an intrinsic ability to cause sensitization by skin contact. And given human

---

[7] "In-use concentrations" refers the concentration or percentage by weight of the ingredient in the Products.  Despite claiming to "believe that transparency is an essential part of choosing safe and effective products for your home," and unlike many companies that sell consumer products, Defendant does not disclose the ingredients' concentrations or percentages by weight in the Products. Therefore, these allegations are made on information and belief, based on what the ingredients' likely concentrations or percentages by weight are in the Products.

heterogeneity, the achievement of zero risk of induction of contact dermatitis from fragranced products is unattainable, regardless of the small amount of fragrance added to consumer products.

31.     Indeed, a sizeable segment of the American population reports adverse reactions to fragranced products, with 30.5% reporting that scented products are irritating and 19% experiencing headaches, breathing difficulties, and other problems from fragranced products.

32.     In addition, individuals with asthma and chemical sensitivity report adverse effects to scented products in higher proportions than the general public.

33.     Therefore, certain consumers exposed to these fragrances will experience some combination of eye, nose, and/or throat irritation, respiratory difficulty, possibly bronchoconstriction or asthma-like reaction, and central nervous systems reactions (e.g., dizziness, incoordination, confusion, fatigue).

34.     In fact, Defendant discloses on its website—but not on the Products' labeling—that each of the Fragrance Components listed *supra* are **skin allergens**.

35.     Moreover, Citronellol; Cinnamal; and Linalool are all listed on the European Union Allergens List as recognized allergens.

36.     **Isopropanolamine ("IPA").** Upon information and belief, isopropanolamine can causes conjunctivitis at in-use concentrations.

37.     **Lactic Acid.** Upon information and belief, lactic acid can cause erythema, desquamation, and drying of the skin at in-use concentrations.

38.     **Lauramine Oxide.** Upon information and belief, lauramine oxide can cause skin irritation, with a potential for cumulative irritation at in-use concentrations. In addition, upon

information and belief, lauramine oxide can cause erythema with edema, fissuring, and epithelial desquamation at in-use concentrations.

39. **Propylene Glycol (Propane, 1,2-Diol).**  Upon information and belief, propylene glycol is a skin sensitizer in certain populations.

40.  **Sodium Hydroxide.**  Upon information and belief, sodium hydroxide can cause skin irritation and can be corrosive at in-use concentrations.

41. **Sodium Petroleum Sulfonate.**  While dermal irritation studies are mixed, upon information and belief, sodium petroleum sulfonate can cause skin irritation at in-use concentrations, with reactions ranging from erythema to fissure formation, accompanied by scaling.

42. **Sodium Xylene Sulfonate.**  Upon information and belief, sodium xylene sulfonate can cause skin irritation at in-use concentrations.

43. **2-(Hexyloxy)-Ethanol (Ethylene Glycol-N-Monohexyl Ether ("EGHE")).**  Upon information and belief, 2-(Hexyloxy)-Ethanol can cause eye injury at in-use concentrations.

44. Defendant's branding and packaging of the Products is designed to – and does – deceive, mislead, and defraud consumers.

45. Defendant has sold more of the Products and at higher prices per unit than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

46. The marketing of the Products as "non-toxic" has a material bearing on price and consumer acceptance of the Products because consumers are willing to pay more for such Products.

47. The value of the Products that plaintiffs purchased and used was materially less than its

value as represented by defendant.

48. Had plaintiffs and class members known the truth, they would not have bought the Products or would have paid less for them.

49. As a result of the false and misleading labeling, the Products are sold at a premium price, approximately no less than $3.17 for containers of 23 OZ, excluding tax, compared to other similar products represented in a non-misleading way.

<u>Jurisdiction and Venue</u>

50. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

51. Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

52. Plaintiffs Carmen Rivera, Letisha Williams, Rosemary Vavitsas and Lisa Gambardella are citizens of New York.

53. Defendant S. C. Johnson & Son, Inc. is a Wisconsin corporation with a principal place of business in Racine, Racine County, Wisconsin and is a citizen of Wisconsin.

54. Venue is proper because plaintiff purchased the Product, became aware of the events or omissions giving rise to the claims and resides in this district. *See* 28 U.S.C. § 1391(b)(2).

55. Venue is supported because many class members reside in this District.

56. This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

Parties

57.   Plaintiff Carmen Rivera is a citizen of New York, New York County, New York.

58.   Plaintiff Letisha Williams is a citizen of New York, Suffolk County, New York.

59.   Plaintiff Rosemary Vavitsas is a citizen of New York, Queens County, New York.

60.   Plaintiff Lisa Mack is a citizen of New York, Kings County, New York.

61.   Defendant S. C. Johnson & Son, Inc. is a Wisconsin corporation with a principal place of business in Racine, Wisconsin, Racine County.

62.   During the relevant statutes of limitations, plaintiffs purchased the Products within their districts and/or States for personal and household use in reliance on the representations the Products were non-toxic.

63.   Plaintiff Carmen Rivera purchased the Windex Original Non-Toxic Formula several times during 2019 at stores including Duane Reade on Columbus Avenue on the Upper West Side of Manhattan.

64.   Plaintiff Letisha Williams purchased the Windex Vinegar Non-Toxic Formula during 2019, including in early November 2019, at stores including Target in Central Islip on Long Island.

65.   Plaintiff Lisa Mack purchased Windex Ammonia-Free Non-Toxic Formula during 2019 and in or around May 2019 at a Stop & Shop Supermarket near Sheepshead Bay in Brooklyn.

66.   Plaintiff Rosemary Vavitsas purchased the Windex Ammonia-Free Non-Toxic Formula during 2019 and in early 2020, at a Key Food Supermarket in Flushing in Queens.

67.   Plaintiffs bought the Products because they wanted to avoid harm caused by harsh chemicals and understood non-toxic in the manner identified above.

68.   Plaintiffs would buy the Products again if assured it did not contain components which

14

were toxic and had the harsh physical and environmental effects they did.

<u>Class Allegations</u>

69.   The class will consist of all purchasers of the Products in New York during the from October 16, 2014 to time of judgment (the "Class").

70.   Excluded from the Class are officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, and their legal representatives, heirs, successors or assigns and any entity in which they have or have had a controlling interest.

71.   Plaintiffs seek class-wide injunctive relief based on Rule 23(b)(2) in addition to a monetary relief  based on Rule 23(b)(3).

72.   Numerosity is met as it is anticipated there are, at a minimum, tens of thousands of proposed class members.

73.   Common questions of law or fact predominate and include whether Defendant's representations were likely to be misleading.

74.   Plaintiffs' claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

75.   Plaintiffs are adequate representatives because their interests do not conflict with other members.

76.   No individual issues predominate since the focus is only on defendant's practices.  And a class action is superior to numerous individual actions.

77.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

78.   Plaintiffs' counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

79.   Plaintiffs seek class-wide injunctive relief because the practices continue.

**FIRST CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 349**

**(On Behalf of Plaintiffs and the Class)**

80.     Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

81.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

82.     The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349. Defendant misleadingly, inaccurately, and deceptively presents its Products to consumers.

83.     Defendant's improper consumer-oriented conduct is misleading in a material way in that it, *inter alia*, induced Plaintiffs and other Class members to purchase and/or pay a premium for Defendant's Products when they otherwise would not have.

84.     Defendant made their untrue or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

85.     Plaintiffs and other Class members have been injured inasmuch as they paid a premium for the Product. Accordingly, Plaintiffs and other Class members received less than what they bargained or paid for.

86.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiffs and other members of the Class have been damaged thereby.

87.     As a result of Defendant's recurring deceptive acts and practices, Plaintiffs and other

Class members are entitled to monetary and compensatory damages, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs. This includes actual damages under GBL § 349, as well as statutory damages of $50 per unit purchases pursuant to GBL § 349.

<u>**SECOND CAUSE OF ACTION**</u>
<u>**VIOLATION OF NEW YORK GBL § 350**</u>

**(On Behalf of Plaintiffs and the Class)**

88.　Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

89.　N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

90.　N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

91.　Defendant's labeling of the Products contains untrue and materially misleading "Non-Toxic Formula" representations.

92.　Plaintiffs Class members have been injured inasmuch as they relied upon the false and deceptive representations and paid a premium for the Products. Accordingly, Plaintiffs Class

members received less than what they bargained or paid for.

93.     Defendant's packaging and product labeling induced Plaintiffs Class members to buy Defendant's Products.

94.     Defendant made the untrue and misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

95.     Defendant made the material misrepresentations described in this Amended Class Action Complaint on the Product's packaging and labeling.

96.     Defendant's material misrepresentation was substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

97.     As a result of Defendant's recurring, acts and practices in violation of GBL § 350, Plaintiffs Class members are entitled to monetary and compensatory damages, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs as well as statutory damages of $500 per unit purchased.

**THIRD CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiffs and the Class)**

98.     Plaintiffs incorporate by references all preceding paragraphs.

99.     Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of Plaintiffs and Class Members, who seek restitution and disgorgement of inequitably obtained profits.

**Prayer for Relief**

 **WHEREFORE**, Plaintiffs pray for judgment:

1.  Declaring this a proper class action, certifying plaintiffs as representatives and the undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3.  Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4.  Awarding monetary damages and interest pursuant to the common law and other statutory claims;

5.  Awarding costs and expenses, including reasonable fees for plaintiffs' attorneys and experts; and

6.  Other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a jury trial on all issues.


Dated:   October 16, 2020

Respectfully submitted,

**REESE LLP**

*/s/ Michael R. Reese*

Michael R. Reese
Sue J. Nam
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Fax: (212) 253-4272
*mreese@reesellp.com*
*snam@reese.com*

**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck, New York 11021
Tel: (516) 268-7080
Fax: (516) 234-7800
*spencer@spencersheehan.com*