ADAM J. HUNT
AdamHunt@mofo.com
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019-9601
Telephone: 212.468.8000
Facsimile: 212.468-7900

DAVID F. MCDOWELL
DMcDowell@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California 90017-3543
Telephone: 213.892.5200
Facsimile: 213.892.5454
*(Admitted Pro Hac Vice)*

Attorneys for Defendant
S.C. JOHNSON & SON, INC.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

CARMEN RIVERA, LETISHA WILLIAMS,
ROSEMARY VAVITSAS, LISA MACK,
individually and on behalf of all others similarly
situated,

             Plaintiffs,

-against-

S.C. JOHNSON & SON, INC.,

             Defendant.

------------------------------------------------------------x

Index No. 1:20-CV-03588-RA
Hon. Ronnie Abrams

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT S.C. JOHNSON & SON, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

sf-4375059

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................... 1

FACTUAL BACKGROUND .......................................................................................................... 2

LEGAL STANDARD ..................................................................................................................... 3

ARGUMENT .................................................................................................................................. 4

I.  PLAINTIFFS' GBL §§ 349 AND 350 CLAIMS FAIL AS A MATER OF LAW. .......... 4

    A.  Plaintiffs Fail to Plausibly Allege That The Products' Non-Toxic Labels
        Mislead Reasonable Consumers. ............................................................................ 4

    B.  Plaintiffs' GBL Claims Fail Because Plaintiffs Do Not Plead a Viable
        Injury. ...................................................................................................................... 7

II. PLAINTIFFS LACK ARTICLE III STANDING ............................................................ 8

    A.  Plaintiffs Lack Standing to Sue Over a Product They Never Purchased. .............. 9

    B.  Plaintiffs Lack Standing to Seek Injunctive Relief Where They Do Not
        Have Concrete Plans to Purchase the Products in the Future. ............................. 10

III. PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS BECAUSE IT IS
     DUPLICATIVE OF THE GBL CLAIMS. ..................................................................... 12

CONCLUSION ............................................................................................................................. 13

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Albert v. Blue Diamond Growers*,
  151 F. Supp. 3d 412 (S.D.N.Y. 2015) ................................................................................... 11

*Am. Civil Liberties Union v. Clapper*,
  785 F.3d 787 (2d Cir. 2015) ................................................................................................. 11

*Atik v. Welch Foods, Inc.*,
  No. 15-CV-5405(MKB)(VMS), 2016 WL 5678474 (E.D.N.Y. 2016) ................................. 11

*Bank v. Philips Elecs. N. Am. Corp.*,
  No. 14-cv-5312 (JG)(VMS), 2015 WL 1650926 (E.D.N.Y. 2015) ........................................ 3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................... 4

*Buonasera v. Honest Co., Inc.*,
  No. 16 Civ. 1125 (VM), 2016 WL 5812589 (S.D.N.Y. 2016) .................................... 3, 11, 12

*Colella v. Atkins Nutritionals, Inc.*,
  348 F. Supp. 3d 120 (E.D.N.Y. 2018) .................................................................................... 8

*Corsello v. Verizon N.Y., Inc.*,
  18 N.Y.3d 777 (2012) ........................................................................................................... 12

*Daniel v. Tootsie Roll Indus., LLC*,
  No. 17 CIV. 7541 (NRB), 2018 WL 3650015 (S.D.N.Y. Aug. 1, 2018) ............................ 5, 6

*DiMuro v. Clinique Labs.*,
  LLC, 572 F. App'x 27 (2d Cir. 2014) ............................................................................... 9, 10

*Ebin v. Kangadis Food Inc.*,
  No. 13 CIV. 2311 JSR, 2013 WL 6504547, at *7 (S.D.N.Y. Dec. 11, 2013) ....................... 12

*Elkind v. Revlon Consumer Prod. Corp.*,
  No. 14-CV-2484 JS AKT, 2015 WL 2344134 (E.D.N.Y. 2015) ............................................ 9

*Fink v. Time Warner Cable*,
  714 F.3d 739 (2d Cir. 2013) ................................................................................................... 4

*Goshen v. Mut. Life Ins. Co.*,
  98 N.Y.2d 314 (2002) ............................................................................................................. 7

*Hart v. BHH, LLC*,
   No. 15CV4804, 2016 WL 2642228 (S.D.N.Y. 2016) ..........................................................9, 10

*Izquierdo v. Mondelez Int'l, Inc.*,
   No. 16-CV-04697 (CM), 2016 WL 6459832 (S.D.N.Y. 2016) ..........................................7, 11

*Kommer v. Bayer Consumer Health*,
   252 F. Supp. 3d 304 (S.D.N.Y. 2017), aff'd sub nom. *Kommer v. Bayer
   Consumer Health, a division of Bayer AG*, 710 F. App'x 43 (2d Cir. 2018). .......................4, 5

*Koenig v. Boulder Brands, Inc.*,
   995 F. Supp. 2d 274, 290 (S.D.N.Y. 2014) .................................................................................12

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ....................................................................................................................8

*Maurizio v. Goldsmith*,
   230 F.3d 518 (2d Cir. 2000) ........................................................................................................4

*Nicosia v. Amazon, Inc.*,
   834 F.3d 220 (2d Cir. 2016) ......................................................................................................10

*Rodriguez v. It's Just Lunch, Int'l*,
   No. 07CIV9227(SHS)(KNF), 2010 WL 685009 (S.D.N.Y. Feb. 23, 2010) ..............................7

*Rugg v. Johnson & Johnson*,
   No. 17-cv-05010-BLF, 2018 WL 3023493 (N.D. Cal. June 18, 2018) ......................................6

*Small v. Lorillard Tobacco Co.*,
   94 N.Y.2d 43 (1999) ...................................................................................................................7

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ................................................................................................................9

*W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*,
   549 F.3d 100 (2d Cir. 2008) ........................................................................................................3

*Weinstein v. eBay, Inc.*,
   819 F. Supp. 2d 219 (S.D.N.Y. 2011) .........................................................................................5

**Statutes**

New York General Business Law § 349 ................................................................................*passim*

New York General Business Law § 350 ................................................................................*passim*

**Other Authorities**

Fed. R. Civ. P 11 ............................................................................................................................7

Fed. R. Civ. P 12(b)(1) ............................................................................................................. 1, 3

Fed. R. Civ. P 12(b)(6) ............................................................................................................. 1, 3

Defendant S.C. Johnson & Son, Inc. ("SC Johnson") respectfully submits this memorandum of law in support of its motion to dismiss Plaintiffs Carmen Rivera, Letisha Williams, Rosemary Vavitsas, and Lisa Mack's ("Plaintiffs") First Amended Class Action Complaint (the "Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## PRELIMINARY STATEMENT

Reasonable consumers understand "non-toxic" to mean something is not toxic; that is, it is not poisonous or capable of causing death or serious debilitation. A non-toxic product label signals to a reasonable consumer that the product, evaluated in its entirety, is not toxic. Despite this common understanding, Plaintiffs claim the "non-toxic" label on Windex cleaning products is misleading because the products contain ingredients that may cause eye and skin irritation. They claim that the presence of vinegar – a substance commonly found in food – renders a Windex product toxic. Nowhere in the Complaint, however, do Plaintiffs allege the Windex products they purchased as formulated are toxic. These allegations – and the lack thereof – underscore why Plaintiffs' interpretation of "non-toxic" is unreasonable. Their allegations based on the existence of allegedly toxic ingredients are insufficient to state a claim, and the Court should dismiss their claims for three main reasons.

*First*, Plaintiffs' New York GBL §§ 349 and 350 claims fail because the non-toxic labels do not mislead reasonable consumers and Plaintiffs do not plead any specific harm apart from "deception." Plaintiffs' personal interpretation of non-toxic does not reflect a reasonable consumer's understanding of the term because a reasonable consumer defines non-toxic according to the dictionary. Plaintiffs' allegation that a non-toxic label indicates a product only contains non-toxic ingredients also expressly contradicts Federal Trade Commission ("FTC") guidance on this exact issue. Plaintiffs also do allege a sufficient financial injury. Plaintiffs

merely contend that they would not have purchased the Products or they would have paid less for them if they had known that the Products contained the allegedly "toxic" ingredients. They generally conclude that they paid a "premium price" for the Products, but fail to provide any details regarding what the premium is or the price of comparable non-premium products.

*Second*, Plaintiffs lack standing to pursue claims concerning a Product they did not purchase. And they cannot pursue claims for injunctive relief based on speculation that they would purchase the Products in the future *if* SC Johnson reformulated the products.

*Third*, and finally, Plaintiffs' claim for unjust enrichment fails because it is duplicative of their GBL claims.

## FACTUAL BACKGROUND

SC Johnson develops and sells four separate glass cleaners with non-toxic formula labels, Windex Original, Windex Vinegar, Windex Crystal Rain Ammonia-Free, and Windex Multi-Surface (the "Products"). (Motion for Judicial Notice In Support of S.C. Johnson & Son, Inc.'s Motion to Dismiss the Complaint ("RJN"), Exs. A-D.) Although the Products bear the same "non-toxic" labelling, they have distinct formulas, different ingredients, and unique uses. (*Id.*)

The word "toxic" means that a substance is "poisonous" or "capable of causing death or serious debilitation." (RJN, Ex. E.) "Non-toxic" means the opposite: that a substance is not poisonous and will not cause death or serious debilitation. *Id.* The FTC Green Guides recognize a "non-toxic product could contain a toxic substance at a level that is not harmful to humans or the environment." (RJN, Ex. F at 148.) For example, an apple is non-toxic, even though apple seeds contain cyanide, which is toxic, because the amount of cyanide in an apple is so low. *Id.*

Despite a common consumer understanding of and clear regulatory guidance on the meaning of non-toxic, Plaintiffs assert non-toxic implies a product does not (1) pose *any* risk of

2

harm to humans, animals, or the environment and (2) contain "potentially harmful and toxic compounds." (Compl. ¶¶ 15,19.) Based on their idiosyncratic definition of non-toxic, Plaintiffs sued SC Johnson, claiming that the non-toxic formula label on the Products is misleading because the Products contain allegedly harmful ingredients. (*Id*. ¶¶ 19, 44.) They claim that the presence of vinegar – a substance commonly found in food – renders a Product toxic. (*Id*. ¶22.) Nowhere in their Complaint do Plaintiffs claim that any of the Products' formulas are toxic. Plaintiffs assert three causes of action for: (1) violation of the New York General Business Law ("GBL") § 349; (2) violation of GBL § 350; and (3) unjust enrichment. (*Id*. ¶¶ 80-99.) They seek injunctive relief and damages on behalf of a putative class of "all purchasers of the Products in New York…from October 16, 2014 to the time of judgement." (*Id*. ¶ 69.)

## LEGAL STANDARD

"The inquiry on a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) concerns whether the district court has the statutory or constitutional power to adjudicate the case." *See Buonasera v. Honest Co., Inc.*, No. 16 Civ. 1125 (VM), 2016 WL 5812589, at *2 (S.D.N.Y. 2016) (*citing Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). To establish Article III standing, Plaintiffs must allege: "(1) *injury-in-fact*, which is a 'concrete and particularized' harm to a 'legally protected interest'; (2) *causation* in the form of a 'fairly traceable' connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) *redressability* . . ." *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106-07 (2d Cir. 2008) (citation omitted, emphasis in original). "To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts to state a claim to relief that is plausible on its face." *Bank v. Philips Elecs. N. Am. Corp.*, No. 14-cv-5312 (JG)(VMS), 2015 WL 1650926, at *1 (E.D.N.Y. 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

3

Although the court must accept the facts pleaded in the complaint as true, a plaintiff must provide "more than labels and conclusions" and "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## ARGUMENT

I.   **PLAINTIFFS' GBL §§ 349 AND 350 CLAIMS FAIL AS A MATER OF LAW.**

Plaintiffs' GBL §§ 349 and 350 claims fail because the non-toxic labels do not mislead reasonable consumers, and Plaintiffs do not plead any specific harm apart from "deception." To state a claim under GBL §§ 349 or 350, a plaintiff must allege the "defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Kommer v. Bayer Consumer Health*, 252 F. Supp. 3d 304, 310 (S.D.N.Y. 2017), aff'd sub nom. *Kommer v. Bayer Consumer Health, a division of Bayer AG*, 710 F. App'x 43 (2d Cir. 2018). Plaintiffs fail to plausibly allege the second and third elements required to state a claim for a violation of GBL §§ 349 and 350.

   A.   **Plaintiffs Fail to Plausibly Allege That The Products' Non-Toxic Labels Mislead Reasonable Consumers.**

Plaintiffs do not adequately allege that the Products' labels are materially misleading because Plaintiffs' personal definition of non-toxic does not reflect a reasonable consumer's understanding of the term and contradicts FTC guidance on this issue. A statement is actionable under GBL §§ 349 and 350 only if it is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000). "It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013). District courts in the Second Circuit routinely dismiss GBL §§ 349 and 350 claims when reasonable consumers do not interpret the challenged statements as

4

sf-4375059

plaintiffs do. *See e.g. Kommer*, 252 F. Supp. 3d at 313 (finding challenged statement would not mislead reasonable consumers as a matter of law and dismissing GBL §§ 349 and 350 claims); *Daniel v. Tootsie Roll Indus., LLC*, No. 17 CIV. 7541 (NRB), 2018 WL 3650015, at *11 (S.D.N.Y. Aug. 1, 2018)(finding a reasonable consumer would not be misled by slack-fill as a matter of law when the product boxes allow a consumer to determine the amount of Product contained in the box); *Weinstein v. eBay, Inc.*, 819 F. Supp. 2d 219, 228 (S.D.N.Y. 2011)(dismissing GBL § 349 claim when "common sense dictates that no reasonable consumer could plausibly think that StubHub tickets come directly from the Yankees" as plaintiff alleged). Plaintiffs' Complaint fails to meet the reasonable consumer standard.

Plaintiffs premises their entire claim on a theory that a reasonable consumer believes a non-toxic label implies a product does not (1) pose *any* risk of harm to humans, animals, or the environment and (2) contain "potentially harmful and toxic compounds." (Compl. ¶¶ 15,19.) This understanding of "non-toxic" is unreasonable, implausible, and contrary to FTC guidance on the topic.

First, Plaintiff's definition of non-toxic is unreasonable because it is contrary to the term's dictionary definition. The word toxic means that a substance is "poisonous" or "capable of causing death or serious debilitation." (RJN, Ex. E.) Non-toxic means the opposite: that a substance is not poisonous and will not cause death or serious debilitation. *Id*. Plaintiffs' claim that they interpreted the non-toxic label to mean that the Products do not pose *any* risk of harm to people, animals, or the environment is implausible and directly at odds with the term's definition. Plaintiffs' personal interpretation of non-toxic leads to the absurd conclusion that something is deceptively labeled non-toxic if it could cause a consumer mild discomfort. Using Plaintiffs' definition, it is deceptive to label a lemon "non-toxic" because lemon juice can cause

5

sf-4375059

consumers severe discomfort if squeezed in their eyes. It would be similarly misleading to label an onion "non-toxic" because the enzymes in onions can irritate consumers' eyes and even cause them to cry. But no reasonable consumer believes this any more than he or she thinks spicy foods – which can cause gastrointestinal discomfort – are toxic.

*Rugg v. Johnson & Johnson* is particularly instructive here. *See* No. 17-cv-05010-BLF, 2018 WL 3023493 (N.D. Cal. June 18, 2018). In *Rugg*, plaintiffs claimed "hypoallergenic" labels on baby products were misleading. *Id*. at *1. Plaintiffs asserted reasonable consumers believe that a product labeled hypoallergenic "does not contain any skin sensitizers" or any "ingredients known to produce a negative reaction." *Id*. at *2. The dictionary, however, defines hypoallergenic as "having little likelihood of causing an allergic response." *Id*. at *3. The Court dismissed plaintiffs' claims finding it "completely implausible" that a reasonable consumer would understand hypoallergenic as the plaintiffs do given the dictionary definition. *Id*. Here, Plaintiffs' interpretation of non-toxic is similarly incompatible with its dictionary definition and does not align with a reasonable consumer's understanding of the term. A non-toxic label does not indicate to a reasonable consumer that a product does not pose any risk of harm to people, animals, or the environment.

Second, Plaintiffs' claim that that the Products' non-toxic labels are materially misleading because the Products contain ingredients that "may be harmful" to humans, pets, and the environment is also implausible and unsustainable. The non-toxic labels indicate the entire Product is non-toxic, not its components. Plaintiff's allegation that a Product is toxic because it contains vinegar demonstrates the implausibility of Plaintiffs' claim. Vinegar is a common ingredient in food. By Plaintiff's logic, many foods are toxic because they contain vinegar.

sf-4375059

FTC guidance on this issue also establishes that Plaintiff's interpretation of the term belies common sense. As the FTC Green Guides recognize, a "non-toxic product could contain a toxic substance at a level that is not harmful to humans or the environment." (RJN, Ex. F at 148). For example, an apple is non-toxic, even though apple seeds contain cyanide, which is toxic, because the amount of cyanide in an apple is so low. *Id*. This guidance squares with reasonable consumers' understanding of non-toxic product labels. The Products' labels clearly indicate that each Product, assessed as a whole, is non-toxic. Plaintiffs do not allege that any of the Products' formulas are toxic and SC Johnson believe that they could not do so consistent with Fed. R. Civ. P 11. As such, reasonable consumers do not interpret the Products' non-toxic label to mean that the Products do not pose any risk of harm to humans, pets, or the environment and only contain non-toxic ingredients.

### B. Plaintiffs' GBL Claims Fail Because Plaintiffs Do Not Plead a Viable Injury.

Plaintiffs' conclusory allegations that SC Johnson sells the Products at a "premium price" are not enough to plead a viable injury under GBL §§ 349 and 350. To state a claim under GBL §§ 349 and 350, plaintiff must allege either "pecuniary or 'actual' harm," separate and apart from any alleged "deception." *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (1999); *Goshen v. Mut. Life Ins. Co.*, 98 N.Y.2d 314, 324 n.1 (2002) ("The standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to section 349"). "[C]onsumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have not suffered an injury cognizable under GBL § 349 [and 350]." *Rodriguez v. It's Just Lunch, Int'l*, No. 07CIV9227(SHS)(KNF), 2010 WL 685009, at *9 (S.D.N.Y. Feb. 23, 2010). Merely "recit[ing] the word 'premium' multiple times" in a complaint "does not make Plaintiff['s] injury any more cognizable." *Izquierdo*, 2016 WL 6459832 at *5 (dismissing GBL claim when plaintiffs alleged they paid a premium for the products but did not

7

sf-4375059

show that they paid a higher price for the product than they otherwise would have, absent deceptive acts).

Despite *Izquierdo's* finding that reciting the mantra "price premium" is inadequate to support a claim, Plaintiffs do nothing more here. Plaintiffs allege "the Product is sold at a premium price…compared to other similar products" and that had they "known the truth" they "would not have bought the Product or would have paid less for them." (Compl. ¶¶ 48-49). They does not assert the prices of any similar, allegedly cheaper competitor products.

In *Colella*, the court held that these conclusory allegations of a "price premium" did not allege a cognizable injury under §§ 349 and 350. *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018). There, plaintiff alleged defendant "charge[d] a premium for its products and specifically markets them in a premium location of its retailers; thus, Plaintiff and members of the Class paid more than they normally would have for comparable products." *Id*. The Court held such a "conclusory" allegation was insufficient when plaintiff provided "no facts regarding what the premium was, what price he paid for the products, or the price of non-premium products." *Id*. Like in *Coella*, Plaintiffs conclude that Products are sold "at a premium price" without providing the price of similar non-premium products. Their general allegations are not enough to establish a pecuniary harm separate from any alleged deception. Thus, their GBL §§ 349 and 350 claims should be dismissed.

## II.    PLAINTIFFS LACK ARTICLE III STANDING

Plaintiffs lack standing to bring this action because they sue over a Product they never purchased and allege far too speculative an injury to seek injunctive relief. To establish Article III standing, a plaintiff must plead and prove "injury in fact," causation, and redressability. "[I]njury in fact" requires damage to "a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent', not 'conjectural or hypothetical.'" *Lujan v. Defs. of*

8

sf-4375059

*Wildlife*, 504 U.S. 555, 560 (1992) (internal citations omitted). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (citation omitted).

### A.  Plaintiffs Lack Standing to Sue Over a Product They Never Purchased.

Plaintiffs cannot challenge the non-toxic labels on Windex Multi-Surface because they did not buy it and did not suffer an injury by it. "[I]n a class action, the named plaintiffs must themselves have standing to sue; it is not sufficient to show that 'an injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Hart v. BHH, LLC*, No. 15CV4804, 2016 WL 2642228, at *2 (S.D.N.Y. 2016) (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)). Applying this black-letter law, the Second Circuit dismisses consumer claims concerning unpurchased products where the unpurchased products are not "nearly identical". *See DiMuro v. Clinique Labs., LLC*, 572 F. App'x 27, 29 (2d Cir. 2014)(finding plaintiff lacked class standing as to products that she did not buy where the challenged products had different ingredients); *Hart*, 2016 WL 2642228, at *4 (dismissing claims concerning unpurchased products because "[t]he products are distinct and serve different purposes"); *Elkind v. Revlon Consumer Prod. Corp.*, No. 14-CV-2484 JS AKT, 2015 WL 2344134, at *4 (E.D.N.Y. 2015) ("Because they have not purchased the [product], [p]laintiffs have not been injured in the 'personal and individual way' required by Article III").

Because each Product has a distinct formula, contains different ingredients, and cleans in unique ways, the Products are not "nearly identical." The Complaint acknowledges these substantial dissimilarities by highlighting the different ingredients in each Product. (Compl. ¶23.) Only one of the twenty-five ingredients Plaintiffs highlight is found in all the Products. (*Id*.) And, most of the complained of ingredients are not found in a majority of the Products. (*Id*.) For instance, Windex Original, Windex Multi-Surface, and Windex Ammonia-Free do not

contain acetic acid or lactic acid. (*Id.*) Similarly, Windex Vinegar, Windex Multi-Surface, and Windex Ammonia-Free do not contain ammonium hydroxide, methylpropional, citronellol, citrus aurantium dulcis peel oil, or tepineol. (*Id.*)

*Dimuro* is exactly on point here. There, the Second Circuit affirmed dismissal of plaintiffs' false advertising claims for products they did not purchase. *DiMuro*, 572 F. App'x at 29. Plaintiff alleged defendant's marketing of seven products sold in the same product line was false and misleading. *Id*. Plaintiff only purchased and used three of the seven products, however. *Id*. Each of the seven products contained different ingredients. *Id*. The court found the products were not "nearly identical" and affirmed dismissal of plaintiffs' claims as to products they did not purchase because unique evidence would be required to prove each advertising statement was false and misleading. *Id*.

SC Johnson submits that the Court should reach the same conclusion here. Each of the challenged Products similarly contains different ingredients and unique evidence would be required to prove each Product formula is toxic. Given the differences between the Products, Plaintiffs only have standing with respect to the Products that they actually purchased. Because Plaintiffs did not purchase Windex Multi-Purpose, they lack standing to challenge the labels on Windex Multi-Purpose, and their claims should be dismissed. *See Hart*, 2016 WL 2642228, at *4.

      **B.**    **Plaintiffs Lack Standing to Seek Injunctive Relief Where They Do Not Have Concrete Plans to Purchase the Products in the Future.**

Furthermore, Plaintiffs lack standing to seek injunctive relief because they do not definitively plan to purchase any Product in the future. A plaintiff seeking injunctive relief must allege a "real or immediate threat" of future injury. *Nicosia v. Amazon, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (internal quotation marks and citations omitted). "'Allegations of *possible* future

10

injury" are not sufficient.'" *Am. Civil Liberties Union v. Clapper*, 785 F.3d 787, 800 (2d Cir. 2015) (quoting *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013)). In addition, "to seek injunctive relief on behalf of a class, the named plaintiffs must themselves have standing." *Albert v. Blue Diamond Growers*, 151 F. Supp. 3d 412, 418 (S.D.N.Y. 2015).

Plaintiffs' tentative intention to purchase the Products again is not a concrete plan. They assert they would buy the Products again *if* assured the product did not contain "components which were toxic and had the harsh physical and environmental effects they did." (Compl. ¶68.) This hypothetical plan is not an actual or imminent injury because Plaintiffs will potentially buy the Products only if SC Johnson reformulates them. Their alleged injury is contingent on events that may or may not occur, and is thus only a possible future injury.

Courts routinely reject hypothetical intentions to purchase a product to support injunctive relief claims. See *e.g. Buonasera*, 208 F. Supp. 3d at 564 (holding plaintiff does not demonstrate a likelihood of future injury when he alleges he would consider purchasing the product in the future if it was reformulated); *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-04697 (CM), 2016 WL 6459832, at *5 (S.D.N.Y. 2016)(finding plaintiff lacked standing to seek injunctive relief when he alleged he would not purchase the product again unless defendant changed the packaging); *Atik v. Welch Foods, Inc.*, No. 15-CV-5405(MKB)(VMS), 2016 WL 5678474, at *6 (E.D.N.Y. 2016) (finding allegations that plaintiffs would purchase challenged products again if the labels were "truthful and non-deceptive" insufficient to establish future injury).

In *Buonasera*, the court dismissed plaintiff's request for injunctive relief holding he did not demonstrate a likelihood of future injury. *Buonasera*, 208 F. Supp. 3d at 564. Plaintiff alleged that if the defendant's "products were reformulated such that its representations were truthful, Plaintiff would consider purchasing [defendant's] products in the future." *Id*. The court

11

found "this allegation is insufficient to allege future injury," and held plaintiff did not have standing to seek injunctive relief. *Id.* at 565. Here, like in *Buonasera*, Plaintiffs' potential plan to purchase the Products only "if assured [the products] did not contain components which were toxic and had the harsh physical and environmental effects they did," is insufficient to allege future injury. (Compl. ¶ 68.) Accordingly, SC Johnson respectfully requests the Court dismiss Plaintiffs' request for injunctive relief with prejudice.

### III.   PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS BECAUSE IT IS DUPLICATIVE OF THE GBL CLAIMS.

Plaintiffs' unjust enrichment claim is factually identical to their other claims and should be dismissed. Plaintiffs cannot maintain a duplicative unjust enrichment claim based on the same alleged "deceptive and misleading non-toxic claims" that Plaintiffs claim violates GBL §§ 349 and 350. (*See* Compl. ¶¶ 83, 91.) An unjust enrichment claim fails where it "simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012); *see also Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 290 (S.D.N.Y. 2014)(dismissing unjust enrichment claim as duplicative of GBL § 349 and breach of express warranty claims, because "an unjust enrichment claim cannot survive where it simply duplicates, or replaces, a conventional contract or tort claim") (quotation omitted). Plaintiffs' unjust enrichment claim is factually identical to their GBL claims. Accordingly, Plaintiffs' entirely duplicative unjust enrichment claim should be dismissed. *See Ebin v. Kangadis Food Inc.*, No. 13 CIV. 2311 JSR, 2013 WL 6504547, at *7 (S.D.N.Y. Dec. 11, 2013).

## CONCLUSION

For the reasons set forth above, SC Johnson respectfully requests that the Court dismiss the Complaint in its entirety with prejudice.

Dated: Los Angeles, California  
November 13, 2020

Respectfully submitted,

MORRISON & FOERSTER LLP

By: /s/ David F. McDowell  
    David F. McDowell

Attorneys for Defendant  
S.C. JOHNSON & SON, INC.  
707 Wilshire Boulevard, Suite 6000  
Los Angeles, CA 90017-3543  
213.892.5200