UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 09/24/2021
```

CARMEN RIVERA, LETISHA WILLIAMS, LISA MACK, ROSEMARY VAVITSAS,

                 Plaintiffs,

      v.

S.C. JOHNSON & SON, INC.,

                 Defendant.

No. 20-CV-3588 (RA)

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiffs Carmen Rivera, Letisha Williams, Lisa Mack, and Rosemary Vavitsas[1] (collectively, "Plaintiffs") bring this putative class action against Defendant S.C. Johnson & Son, Inc. ("S.C. Johnson" or the "Company") asserting violations of the New York General Business Law's prohibition on deceptive marketing. Plaintiffs allege that S.C. Johnson's labeling of its Windex cleaning products as "Non-Toxic" is misleading to consumers because those products contain ingredients that may be harmful to humans, pets, or the environment. The Company has moved to dismiss the action pursuant to Fed. R. Civ. P 12(b)(6) for failure to state a claim and to dismiss some aspects of Plaintiffs' claims for lack of standing pursuant to Fed. R. Civ. P 12(b)(1). For the reasons that follow, Plaintiffs' claims are dismissed for failure to state a claim, although they will be given an opportunity to file an amended complaint that addresses the deficiencies identified below.

---

[1] Katherine Shimanovsky was listed as a plaintiff on the original complaint, filed May 7, 2020, *see* Dkt. 1, but is no longer listed as a plaintiff in the operative amended complaint, filed October 16, 2020, *see* Dkt. 23. The Clerk of Court is respectfully directed to amend the caption of the case as above.

**BACKGROUND**

**I.     Factual Background**

The Court draws the following facts from the First Amended Class Action Complaint, Dkt. 23 ("Complaint"). For purposes of this motion, the Court accepts all of Plaintiffs' well-pled factual allegations as true and draws all reasonable inferences in their favor. *See Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018).

Plaintiffs are each citizens of New York who purchased one of the following cleaning products in that state in 2019 or 2020: Windex Original Non-Toxic Formula, Windex Vinegar Non-Toxic Formula, and Windex Ammonia-Free Non-Toxic Formula. Compl. ¶¶ 57-60, 63-66. Defendant S.C Johnson is a Wisconsin corporation that "manufactures, distributes, markets, labels, and sells cleaning solutions under its popular 'Windex' brand." *Id.* ¶¶ 1, 61.

The Company prominently labels a number of its Windex products as consisting of a "Non-Toxic Formula," in particular the following four: "Original Non-Toxic Formula, Vinegar Non-Toxic Formula, Ammonia-Free Non-Toxic Formula and Multi-Surface Non-Toxic Formula" (the "Products"). In each case, the label at the top of the bottle reads "NON-TOXIC FORMULA" in capital letters, as depicted here:



*Id.* ¶2. Plaintiffs allege that this labeling scheme is part of the Company's efforts to "market[] and sell[] the Products as environmentally-friendly alternatives to traditional window and glass cleaning products," *id.* ¶ 6, and that they purchased the Products "in reliance on the representations that [they] were non-toxic," *id.* ¶ 62, "because they wanted to avoid harm caused by harsh chemicals," *id.* ¶ 67. Plaintiffs would buy the Products again "if assured [they] did not contain components which were toxic and had … harsh physical and environmental effects." *Id.* ¶ 68.

According to Plaintiffs, "[t]he Products' 'non-toxic' claims signify to reasonable consumers that the Products will not be harmful to people (including small children), common pets or the environment." *Id.* ¶ 15. The National Advertising Division of the Council of Better Business Bureaus Inc. has found, based on an investigation into the Products' use of the phrase "non-toxic," that "the term 'non-toxic' as used by the Products signifies to reasonable consumers" that those Products will not cause "harm," meaning "various types of temporary physical illness, such as vomiting, rash, and gastrointestinal upset." *Id.* ¶¶ 17-18.

Based on this understanding of "toxic," Plaintiffs allege that the Products contain several ingredients that are inconsistent with "the Products' claims of being 'non-toxic.'" *Id.* ¶¶ 19-20. These allegedly harmful ingredients include "acetic acid, alkylbenzene sulfonate, ammonium hydroxide, benzyl benzoate, fragrance components, isopropanolamine, lactic acid, lauramine oxide, propylene glycol, sodium hydroxide, sodium petroleum sulfonate, sodium xylene sulfronate, [and] 2-(hexyloxy)-ethanol." *Id.* ¶ 22. Each of the four Products contains one or more of these ingredients in different combinations. *See id.* ¶ 23.

The Complaint alleges that these ingredients are capable of causing certain harmful effects at their "in-use concentrations" in the Products. *See id.* ¶¶ 25-43. "'In-use concentration[]'" refers to the concentration or percentage by weight of the ingredient in the Products." *Id.* ¶ 25 n.7. Because the

Company "does not disclose the ingredients' concentrations or percentages by weight in the Products," Plaintiffs explain, their allegations as to the actual concentration of the ingredients "are made on information and belief, based on what the ingredients' likely concentrations or percentages by weights are in the Products." *Id.* For example, acetic acid is alleged to "cause severe ocular irritation at in-use concentrations." *Id.* ¶ 25. Ammonium hydroxide and isopropanolamine are alleged to cause conjunctivitis and/or corneal damage, *id.* ¶¶ 27, 36, while 2-(hexyloxy)-ethanol is alleged to cause "eye injury," *id.* ¶ 43. As for the remaining ingredients, Plaintiffs allege that each, at its in-use concentration, causes some form of skin irritation such as erythema, desquamation, drying of the skin, or fissuring. *See id.* ¶¶ 28-30, 37-42.

Plaintiffs further allege that S.C. Johnson "has sold more of the Products and at higher prices per unit than it would have" had it not falsely represented its Products as "non-toxic," but that their value in fact was "materially less" than that represented by the Company. *Id.* ¶¶ 45, 47. According to the Complaint, the "false and misleading label" allows S.C. Johnson to sell the "Products … at a premium price, approximately … $3.17 for containers of 23 OZ, … compared to other similar products represented in a non-misleading way." *Id.* ¶ 49. Had they "known the truth," Plaintiffs allege, "they would not have bought the Products or would have paid less for them." *Id.* ¶ 48.

**II.     Procedural History**

Former plaintiff Katherine Shimanovsky initiated this action on behalf of herself and all others similarly situated on May 7, 2020. Dkt. 1. The Company moved to dismiss on September 8, 2020, principally arguing that Ms. Shimanovsky lacked standing to sue over products that she never purchased. Dkt. 15. Plaintiffs responded by filing the operative Complaint, which no longer lists Ms. Shimanovsky as a plaintiff. Dkt. 23. Plaintiffs now seek to represent a class consisting of "all purchasers of the Products in New York … from October 16, 2014 to time of judgment (the 'Class')."

4

Compl. ¶ 69. They seek class-wide injunctive relief based on Rule 23(b)(2) in addition to monetary relief based on Rule 23(b)(3). *Id.* ¶ 71. The Complaint asserts three causes of action: 1) violation of New York General Business Law ("GBL") § 349; 2) violation of New York GBL § 350; and 3) unjust enrichment.

S.C. Johnson subsequently filed the instant motion to dismiss, along with a request for judicial notice in support of that motion. *See* Dkt. 28 ("Mot."); Dkt. 29 ("RJN"). The request for judicial notice encompasses the Company's publicly available ingredient lists for each of the four Products, the Merriam-Webster.com entry for "toxic," and the "Green Guides Statement of Basis and Purpose" published by the Federal Trade Commission ("FTC"). *See* RJN.

**STANDARD OF REVIEW**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). [2] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To make that determination, the Court must "accept[] all factual allegations as true … but [is] not required to credit conclusory allegations or legal conclusions couched as factual … allegations." *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 189 (2d Cir. 2020). Those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Pursuant to Fed. R. Civ. P. 12(b)(1), a district court shall dismiss an action for lack of subject matter jurisdiction when it "lacks the statutory or constitutional power to adjudicate it … such as when … the plaintiff lacks constitutional standing to bring the action." *Cortlandt St. Recovery Corp.*

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

5

*v. Hellas Telecommunications, S.a.r.l*, 790 F.3d 411, 417 (2d Cir. 2015). "The plaintiff bears the burden of alleging facts that affirmatively and plausibly suggest that [she] has standing to sue." *Id.* In determining whether that burden has been met, the Court must accept as true all material allegations in the complaint, and construe the complaint in favor of the plaintiff. *Id.*

## DISCUSSION

### I. Whether Plaintiffs State a Claim Under the New York General Business Law

Plaintiffs' first two causes of action arise under Sections 349 and 350 of the New York GBL. Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce," whereas Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce." GBL §§ 349–50. To assert a claim under either section, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (citing *Koch v. Acker, Merrall & Condit Co.*, 944 N.Y.S.2d 452, 452 (N.Y. 2012)). S.C. Johnson argues that the Complaint fails to satisfy the second and third elements of a GBL claim because the "Non-Toxic" labels are not misleading as a matter of law and because Plaintiffs have failed to properly allege any cognizable injury. The Court addresses each argument in turn.

#### A. Materially Deceptive or Misleading Practices

To adequately plead materially misleading conduct under GBL §§ 349 and 350, a Plaintiff "must plausibly allege that the deceptive conduct was 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Mantikas,* 910 F.3d at 636 (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013) (per curiam)). The standard for a deceptive act or practice is thus an objective one. Although the Court may under some circumstances determine as a matter

of law that an allegedly deceptive advertisement would not have misled a reasonable consumer, *see, e.g., Fink*, 714 F.3d at 741, that determination is usually a question of fact, *see Goldemberg v. Johnson & Johnson Consumer Companies, Inc.,* 8 F. Supp. 3d 467, 478 (S.D.N.Y. 2014). Still, "plaintiffs must do more than plausibly allege that 'a label might conceivably be misunderstood by some few consumers.' Instead, 'Plaintiffs must plausibly allege that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 242 (S.D.N.Y. 2020) (quoting *Jessani v. Monini N. Am., Inc.*, 744 F. App'x 18, 19 (2d Cir. 2018)).

In the Court's view, although Plaintiffs have plausibly alleged that a reasonable consumer might share their understanding of the meaning of "non-toxic," they have not adequately alleged that the product is actually toxic, even according to their own definition.

### 1. Plaintiffs Have Plausibly Alleged that Reasonable Consumers Believe that "Toxic" Means Generally Harmful to People, Pets, or the Environment

The Company first moves to dismiss on the ground that "Plaintiffs' personal interpretation of non-toxic does not reflect a reasonable consumer's understanding of the term." Mot. at 1. The Court disagrees, at least at this stage of the litigation.

Plaintiffs allege that the "Non-Toxic" labels are misleading to reasonable consumers because they imply that the Products will not be harmful to people, common pets, or the environment, when in fact the Products contain ingredients that, at their alleged levels of concentration in the product, cause skin or eye irritation. *See* Compl. ¶¶ 15-19, 26-44. The Company argues that Plaintiffs' understanding of "Non-Toxic" is "unreasonable, implausible," and contrary to FTC guidance on the subject and to the dictionary definition of "toxic." Mot. at 5. In its view, no reasonable consumer would believe that that "a non-toxic label implies that a product [neither] (1) pose[s] *any* risk of harm to humans, animals, or the environment, [nor] (2) contain[s] potentially harmful and toxic

7

compounds." *Id.* Although the Court finds that argument appealing from a common-sense perspective, it cannot determine as a matter of law that no reasonable consumer would share Plaintiffs' understanding of the word toxic. *See Lugones,* 440 F. Supp. 3d at 242 ("There is significant authority supporting the idea that it is inappropriate for a court to decide whether a reasonable consumer could be misled at the Rule 12(b)(6) stage.").

First, the Court is not persuaded that Plaintiffs' allegations as to how a reasonable consumer would interpret "Non-Toxic" are implausible, let alone contrary to the dictionary definition. The Company cites the definition of "toxic" from Merriam-Webster's online version of its dictionary to argue that the word means "poisonous" or "capable of causing death or serious debilitation." Mot. at 5; *see also* RJN, Ex. E. That may well be the most common understanding of the word toxic. But it is not the only one. Indeed, the Company's own submission indicates that an alternative definition of "toxic" is "extremely harsh, malicious, or harmful." *Id.* In the context of similar litigation, at least two other district courts have recently recognized that the word "toxic" is susceptible of multiple definitions, including "harmful." *See Bush v. Rust-Oleum Corporation*, No. 20-cv-03268-LB, 2021 WL 24842, at *5 (N.D. Cal. Jan. 4, 2021) (denying motion to dismiss); *In re: S.C. Johnson & Son, Inc. Windex Non-Toxic Litigation*, No. 20-cv-03184-HSG, 2021 WL 3191733, at *8 (N.D. Cal. July 28, 2021) (same). Perhaps that is why, as alleged in the Complaint, the Environmental Protection Agency has cautioned "that marketers will rarely, if ever, be able to adequately qualify and substantiate [] a claim of 'non-toxic' in a manner that will be clearly understood by consumers," Compl. ¶ 14.

The ambiguity of the word toxic distinguishes this case from *Rugg v. Johnson & Johnson,* No. 17-CV-05010-BLF, 2018 WL 3023493 (N.D. Cal. June 18, 2018). In *Rugg,* the district court cited several dictionary definitions of "hypoallergenic" to support its conclusion that no reasonable

consumer would plausibly understand that term to mean "that the product does not contain *any* ingredients, in any concentration, which could 'sensitize" the skin.'" *Id.* at *3. Here, by contrast, Plaintiffs' allegations of how a reasonable consumer would interpret the challenged labels are not necessarily inconsistent with the dictionary definition of "toxic."

Lastly, the Court notes that Plaintiffs have provided additional support for their allegations about how reasonable consumers interpret a designation of "non-toxic." They allege that the national advertising division of the Better Business Bureau concluded, after an "investigation," that reasonable consumers equate the term "non-toxic" with a lack of harmfulness. Compl. ¶¶ 17-18. That allegation undercuts the Company's characterization of Plaintiffs' definition as implausible. Indeed, the independent substantiation of a reasonable consumer's understanding of "non-toxic" helps nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *cf. Wynn v. Topco Assocs., LLC*, No. 19-CV-11104 (RA), 2021 WL 168541, at *3 (S.D.N.Y. Jan. 19, 2021) (finding deception inadequately pled in part because "Plaintiffs d[id] not attempt to marshal consumer survey data to support their allegation that reasonable customers interpret 'vanilla' to mean 'flavored with exclusively natural vanilla.'").

### 2. Even by Plaintiffs' Definition, the Product is Not Adequately Alleged to Be Toxic

Plaintiffs' claims still fail, however, because the Complaint does not adequately allege that the Products are toxic, even according to Plaintiffs' own definition.

The parties appear to agree that a product could fairly be described as non-toxic as a whole if it "contain[s] a toxic substance [but only] at a level that is not harmful to humans or the environment." *See* Mot. at 7 (quoting RJN at 148); *see also* Opp. at 12 ("This is not the case of an apple containing trace amounts of cyanide."). *See also id*. at 13-14 (emphasis added) (distinguishing the dismissal of the complaint in *Rugg v. Johnson & Johnson* on the grounds that in that case, the plaintiffs had argued

9

that the word "hypoallergenic" on a product's label was misleading if the product "contain[ed] any ingredients, *in any concentration*, which could" have a negative effect). The question raised by the motion is thus whether Plaintiffs have plausibly alleged that the Products are actually, in their current form, capable of causing harm.

Plaintiffs maintain that they have, and point to the Complaint's allegations that the Products' ingredients—such as acetic acid, ammonium hydroxide, and isopropanolamine—"cause adverse, toxic effects *at 'in-use concentrations*,'" Opp. at 14, meaning at the "concentration or percentage by weight" at which the ingredients appear in the Products, *see* Compl. ¶ 25, n.7. But Plaintiffs essentially acknowledge that they do not know the actual concentrations of the ingredients in the Products, and assert that their allegations that the ingredients are harmful at "in-use concentrations" are "made on information and belief, based on what the ingredients' likely concentrations or percentages by weight are in the Products." *Id*. The Complaint does not explain how Plaintiffs came to such information and belief or what facts, if any, support their conclusions as to the "likely" concentrations of ingredients in the Products. In the Court's view, without more factual content about the makeup of the Products or any evidence that these Products have caused harm in the real world, the Complaint pleads facts that are "merely consistent with a defendant's liability," thereby "stop[ping] short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678.

Plaintiffs argue that they had no choice but to plead their claims in the manner they did, because "Defendant does not disclose the ingredients' concentrations or percentages by weight in the Products." Compl. ¶ 25 n.7. It is true that, as the Second Circuit has held, the "*Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant." *Arista Recs., LLC*

*v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010).[3] In the Court's view, however, this principle is inapplicable here, because information about the composition of the Products and more broadly whether they might cause harm is not "peculiarly within the possession and control" of the Company. The Court arrives at this conclusion for several reasons.

First, even if the precise specifications of the Products are in the Company's exclusive control, information about the effect of those ingredients in their current concentrations is not. If there were evidence that these widely-sold Products have caused harm to "people . . . , common pets, or the environment," Compl. ¶ 17, Plaintiffs presumably could have marshaled such evidence in the Complaint, and doing so may have made plausible the allegations that the toxic ingredients are present in sufficient concentration to cause harm. Plaintiffs, however, do not cite any such evidence—whether by reporting their own experiences in using the Products or even from reviews of the Products on the Internet or elsewhere. Indeed, Plaintiffs do not claim to have suffered any of the harmful effects they assert that the Products can cause.

Second, Plaintiffs might have attempted to analyze the Products, which are widely available. *See* Compl. ¶¶ 63-66 (noting that Plaintiffs purchased the Products at Duane Reade, Target, Stop & Shop, and Key Food). In similar cases, testing of the product at issue is common. *See Sharpe v. A&W Concentrate Co.*, 481 F. Supp. 3d 94, 98 (E.D.N.Y. 2020) (noting, in a case brought by Plaintiffs' counsel, that "scientific testing of the products by an independent laboratory revealed that the vanilla flavoring of the products does not come from the vanilla plant."). The Court does not mean to suggest that a consumer-protection plaintiff will only be able to state a claim if he can retain an expert to

---

[3] Some formulations of this principle of law state that when a plaintiff makes allegations on information and belief, the allegations "must . . . be accompanied by a statement of the facts upon which the belief is founded." *Madonna v. U.S.*, 878 F.2d 62, 66 (2d Cir. 1989); *see also Negrete v. Citibank, N.A.*, 187 F. Supp. 3d 454, 461 (S.D.N.Y. 2016), *aff'd*, 759 F. App'x 42 (2d Cir. 2019). *But see* Wright and Miller, Statement of the Claim—Pleading on Information and Belief, 5 Fed. Prac. & Proc. Civ. § 1224 (3d ed. 2021) ("[W]hen allegations are made on the basis of information and belief, . . . supporting allegations [about the facts on which the belief is founded] seem to be unnecessary and inconsistent with the philosophy of the federal pleading rules.").

conduct sophisticated chemical analysis before bringing suit. But the fact that the Products can be purchased at stores as ubiquitous as Target and tested suggests that basic facts about their chemical composition is not something exclusively in the control of Defendant. At the very least, the Complaint could contain allegations as to why such testing would not have been possible here—it does not. *See Corning Inc. v. Shenzhen Xinhao Photoelectric Tech. Co.*, 478 F. Supp. 3d 456, 466 (W.D.N.Y. 2020) ("A plaintiff cannot, of course, make a purely conclusory allegation that crucial facts are peculiarly within the defendant's knowledge and control.").

Finally, Plaintiffs could have consulted with experts in the field who might have been able to provide even minimal support for their bald assertion that "the ingredients' likely concentrations or percentages by weight" are sufficient to cause harm. *See Bautista v. CytoSport, Inc.*, 223 F. Supp. 3d 182, 191 (S.D.N.Y. 2016) ("It may be challenging for a plaintiff to present [facts about a defendant's product] before discovery, . . . but where a claim is valid it is not impossible; for example, experts in the relevant field can be consulted or comparisons to similar products can be made.").

These and other avenues for learning more about the Products were available to Plaintiffs. The Court accordingly concludes that information about whether the Products actually have the potential to cause harm to persons, pets, or the environment—and thereby satisfy Plaintiffs' definition of "toxic"—is not "peculiarly within the possession and control of the defendant." *Arista Records*, 604 F.3d at 120. Plaintiffs thus cannot avoid their obligation to allege facts upon which the Court can infer "more than the mere possibility of misconduct." *New York v. United Parcel Serv., Inc.*, 131 F. Supp. 3d 132, 137 (S.D.N.Y. 2015). *See also Yamashita v. Scholastic Inc.*, 936 F.3d 98, 107 (2d Cir. 2019) (a plaintiff must "marshal more than unsubstantiated suspicions to gain entitlement to broad-

ranging discovery"). Plaintiffs have not met that obligation, and their GBL claims are accordingly dismissed without prejudice.[4]

Plaintiffs will be granted leave to replead, should they have a good-faith basis to correct the deficiencies identified above. To state a claim, an amended complaint will have to do some combination of the following: substantiate Plaintiffs' claims that the in-use concentration of the potentially harmful ingredients in the Products are sufficient to cause harm, demonstrate that the Products have actually caused some of the harms Plaintiffs say they can cause, and/or significantly strengthen Plaintiffs' allegations that the information necessary to state a claim is exclusively in Defendant's control.

### B. Allegations of Injury

Although the analysis could end there, the Court will proceed to address the Company's remaining arguments for dismissal, as they may be relevant in the event that Plaintiffs choose to amend the Complaint.

The Company contends that Plaintiffs have failed to plausibly allege an injury cognizable under GBL §§ 349 and 350. The New York Court of Appeals has held that a plaintiff must allege some harm that is independent of the deception itself, rejecting the theory that "consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have suffered an injury under General Business Law § 349." *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (N.Y. 1999). To plead a financial injury, "a plaintiff must allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value

---

[4] For the same reasons, Plaintiffs' unjust enrichment claim is also dismissed without prejudice. As the New York Court of Appeals has noted, "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (2012). If Plaintiff brings other such claims, and they succeed, "the unjust enrichment claim is duplicative; if plaintiffs' other claims are defective, an unjust enrichment claim cannot remedy the defects" and "should be dismissed." *Id.* at 791. *See also Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-04697 (CM), 2016 WL 6459832, at *10 (S.D.N.Y. Oct. 26, 2016) (dismissing unjust enrichment claim where other claims premised on the same conduct, including GBL § 349 claims, were dismissed).

13

of her purchase." *Orlander*, 802 F.3d at 302. One recognized method of making that showing is to plead that the product was sold at an inflated price or "premium," and that the plaintiff paid more than she would have but for the deceptive practice. *See, e.g., Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288 (S.D.N.Y. 2014).

      Here, Plaintiffs allege that the Company sold the Products "at higher prices per unit than it would have" but for its deceptive marketing, in part because consumers are "willing to pay more" for products that are "environmentally sound and safer alternatives to traditional glass and window cleaners." Compl. ¶¶ 4, 45, 46. According to Plaintiffs, the non-toxic label allows S.C. Johnson to sell the Products "at a premium price"—of "no less than $3.17" for a 23 oz. container—as "compared to other similar products represented in a non-misleading way." *Id.* ¶ 49. Plaintiffs allege that they themselves "would have paid less" for the products had they known that the Products were, in fact, toxic according to their understanding of the term. *Id.* ¶ 48. Although these allegations would benefit from more factual support—as to the amount of premium that a Non-Toxic cleaner may enjoy as compared to a similar cleaning product that makes no such representation, for example—the Court finds that they suffice to plausibly allege injury at the pleading stage. These allegations are comparable to what numerous other judges in this district have deemed adequate to survive a motion to dismiss. *See, e.g., Mason v. Reed's Inc.,* 515 F. Supp. 3d 135, 144 (S.D.N.Y. 2021); *Koenig,* 995 F. Supp. 2d at 288; *Goldemberg,* 8 F. Supp. 3d at 481 ("other post *Iqbal* cases have found valid § 349 claims despite plaintiffs not identifying competitors or prices"); *Pichardo v. Only What You Need, Inc.*, No. 20-CV-493 (VEC), 2020 WL 6323775, at *6 (S.D.N.Y. Oct. 27, 2020); *but see Izquierdo v. Mondelez Int'l, Inc.,* No. 16-CV-04697 (CM), 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016) (rejecting allegations of injury where Plaintiffs simply "recite[d] the word 'premium' multiple times in their Complaint").

Finding the Complaint's allegations sufficient to plead injury under the GBL, the Court declines to dismiss Plaintiffs' claims on that basis.

### III. Issues of Article III Standing

The Company also argues that "Plaintiffs lack standing to bring this action because they sue over a Product they never purchased and allege far too speculative an injury to seek injunctive relief." Mot. at 8. The Court notes as an initial matter that the Complaint does contain allegations that Plaintiffs purchased three of the four products, *see* Compl. ¶¶ 63-66, and that Plaintiffs seek monetary as well as injunctive relief, *id.* ¶ 71. As a result, even if the Court were to accept both of the Company's arguments about Article III standing, that would not be a sufficient basis to dismiss the entire action pursuant to Fed. R. Civ. P. 12(b)(1). The Court addresses each standing argument in turn.

#### A. Standing for Injunctive Relief

The Company argues that "Plaintiffs lack standing to seek injunctive relief because they do not definitively plan to purchase any Product in the future," and thus have not alleged the requisite likelihood of future harm. Mot. at 10. Pursuant to the well-established law on standing to pursue injunctive relief, a Plaintiff must establish a "real or immediate threat of injury." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016). "Although past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." *Id.*

The Court agrees with S.C. Johnson that Plaintiffs have failed to allege that they are likely to be deceived by the Products' labeling in the future. As the Second Circuit recently stated in the class-certification context, it is particularly difficult for "past purchasers of a consumer product who claim to be deceived by that product's packaging"—like the purchasers of the Products here—to prove that they are "likely to encounter future harm of the kind that makes injunctive relief appropriate." *Berni*

*v. Barilla S.p.A.,* 964 F.3d 141, 147 (2d Cir. 2020). Here, Plaintiffs do allege that they intend to buy the Products again, but only "if assured [they] did not contain components which were toxic and had the harsh physical and environmental effects they did." Compl. ¶ 68. That single allegation does not suffice to surmount the difficulty discussed above, or to establish that future harm is sufficiently imminent to support standing for an injunction. *See Berni*, 964 F.3d at 147.

As the Second Circuit explained in *Berni,* "purchasers who claim to have been deceived by a defendant's deceptive or misleading practices, even if they intend to purchase the good or service at issue again in the future, 'will not again be under the illusion' that caused their initial harm: 'instead, next time they buy the product, they will be doing so with exactly the level of information that they claim they were owed from the beginning.'" *Quintanilla v. WW Int'l, Inc.*, No. 20 CIV. 6261 (PAE), 2021 WL 2077935, at *5 (S.D.N.Y. May 24, 2021) (quoting *Berni*, 964 F.3d at 148); *see also Campbell v. Whole Foods Mkt. Grp., Inc.,* 516 F. Supp. 3d 370, 396 n.17 (S.D.N.Y. 2021) (collecting cases in which "district courts have uniformly applied *Berni* in the context of motions to dismiss"). The Court cannot conceive of a scenario in which these Plaintiffs would again be deceived by the Products' allegedly misleading representations, let alone what kind of injunctive relief would prevent such deception.

Although Plaintiffs cite *Berni* in their opposition, they do not adequately explain how their claims for injunctive relief survive its analysis. Instead, they argue that their claims for money damages salvage their claims for injunctive relief. Opp. at 19. That contention is easily rejected. It is well-established that a plaintiff must have standing for each remedy that she seeks. *See Baur v. Veneman*, 352 F.3d 625, 641 n.15 (2d Cir. 2003) ("a plaintiff must demonstrate standing for each claim and form of relief sought"). Because Plaintiffs lack standing to pursue injunctive relief, on their

16

own behalf or on behalf of a class, the Court dismisses all claims for injunctive relief pursuant to Rule 12(b)(1) with prejudice.

### B. Standing to Bring Claims for Unpurchased Products

Lastly, the Company argues that Plaintiffs lack standing to "challenge the non-toxic labels on Windex Multi-Surface because they did not buy it and did not suffer an injury by it." Mot. at 9. Plaintiffs maintain that they do have standing to bring class action claims for Windex Multi-Surface because that product is sufficiently similar to those products that they did purchase and because the "deceptive non-toxic marketing is identical on each product." Opp. at 17-18. The Court agrees with Plaintiffs.

"A plaintiff seeking to represent a class must personally have standing." *Nicosia*, 834 F.3d at 239. The Second Circuit has stated—albeit in the securities context—that a purchaser of one product may bring claims on behalf of a purchaser of another product when those claims would raise a "nearly identical" "set of concerns." *See NECA–IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012). The Circuit has not, however, applied this principle to the consumer-protection context in a published opinion. In a 2014 summary order, the Second Circuit found that plaintiffs lacked standing under *NECA* to bring claims for four Revlon products they did not purchase because the products had different ingredients from the purchased products and the defendant made different advertising claims for each product. *DiMuro v. Clinique Labs., LLC*, 572 F. App'x 27, 29 (2d Cir. 2014). Proving claims for the different products would thus require "[e]ntirely unique evidence." *Id.*

Following *DiMuro*, a number of district courts within the Circuit have concluded that putative class-action plaintiffs have standing at the pleading stage to assert consumer-protection claims relating to products they themselves did not purchase when two conditions are met: 1) the products

are substantially similar to the products that they did purchase; and 2) the alleged misrepresentation is the same. *See, e.g., de Lacour v. Colgate-Palmolive Co.*, 338 F.R.D. 324, 335 (S.D.N.Y. 2021); *Grossman v. Simply Nourish Pet Food Co. LLC*, 516 F. Supp. 3d 261, 277 (E.D.N.Y. 2021); *Kurtz v. Kimberly-Clark Corp.,* 321 F.R.D. 482, 544 (E.D.N.Y. 2017); *Buonasera v. Honest Co., Inc.,* 208 F. Supp. 3d 555, 563 (S.D.N.Y. 2016). In *de Lacour*, Judge Wood held that the plaintiffs had standing to pursue claims related to both deodorant (which they did purchase) and toothpaste (which they did not), because the alleged misrepresentation on both products—the use of the word "natural"—was the same, even if the allegedly "unnatural" ingredients were different. *See de Lacour*, 338 F.R.D. at 335. Similarly, in *Buonasera*, Judge Marrero focused on the similarity between the defendant's alleged misrepresentations on the purchased and unpurchased products to conclude that the plaintiff had standing to seek relief for the unpurchased products. *Buonasera*, 208 F. Supp. 3d at 563. The Court agrees with the persuasive reasoning in these cases, and with the general principle that concerns regarding the specific differences between the products can be addressed at the class-certification stage. *See id*. ("However, after the benefit of further discovery, the Court will permit Honest to raise this issue again at the class certification stage.").

In this case, Plaintiffs have alleged that the purchased and unpurchased products are largely similar and also that each makes the same exact misrepresentation, namely a label that reads "Non-Toxic Formula." For each product, Plaintiffs claim that such a representation was contradicted by the presence of several harmful ingredients. Plaintiffs assert that each Product commands a price premium based on that representation. Those purported misrepresentations were made by the same defendant, S.C. Johnson. Moreover, as alleged in the Complaint, Windex Multi-Surface Cleaner contains many of the same allegedly harmful ingredients as the purchased products, including 2-Hexyloxyethanol, propylene glycol, and sodium hydroxide. *See* Compl. ¶ 23.

Citing to *DiMuro*, the Company argues that Plaintiffs lack standing to assert claims for the unpurchased product because, owing to its "distinct formula," it is not "nearly identical" to the purchased products. Mot. at 9 (quoting *DiMuro*, 572 F. App'x at 29). But *DiMuro* did not say that the purchased and unpurchased products themselves have to be "nearly identical"—it said, with reference to the *NECA* decision, that the claims regarding both sets of products have to raise a "set of concerns [that are] nearly identical." *DiMuro*, 572 F. App'x at 29. In *DiMuro*, no such identical set of concerns was raised: not only did "each of the seven different products have different ingredients," but the Defendant made "different advertising claims for each product." *Id*. Here, by contrast, the products contain a number of overlapping ingredients and each makes the same exact (alleged) misrepresentation. The facts of this case are thus distinct from *DiMuro* and more similar to *de Lacour* and *Buonasera*, where the courts found standing based on the similarity of the misrepresentation. *See de Lacour,* 338 F.R.D. at 335-36 ("The fact that the deodorant and toothpaste products at issue contain different ingredients is not dispositive, particularly when the sole alleged misrepresentation—that each product is 'natural'—is the same."). For that reason, the fact that Plaintiffs did not purchase Windex Multi-Surface Cleaner does not furnish a basis to dismiss the claims involving that product.

## CONCLUSION

For the foregoing reasons, S.C. Johnson's motion to dismiss is granted. The Complaint is dismissed without prejudice, except with respect to Plaintiffs' prayers for injunctive relief, which are dismissed with prejudice. Plaintiffs may file an amended complaint that corrects the deficiencies identified above, should they have a good-faith basis to do so. Any amended complaint is due within three weeks of the date of this order, although to the extent Plaintiffs need a brief extension of time to investigate, they may request it.

The post-discovery conference previously scheduled for October 1, 2021 is adjourned *sine die*.

The Clerk of Court is respectfully directed to amend the caption as above, *see supra* n.1, and to terminate the motion pending at Dkt. 27.

SO ORDERED.

Dated:   September 24, 2021
         New York, New York

_____
Ronnie Abrams
United States District Judge